[Cite as *State ex rel. Turner Constr. Co. v. Indus. Comm.*, 2013-Ohio-5298.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel.<br>Turner Construction Company<br>of Ohio, | : | |
| | : | |
| Relator, | : | |
| | | No. 13AP-11 |
| v. | : | |
| | | (REGULAR CALENDAR) |
| The Industrial Commission of Ohio<br>and Raymond L. Stevens, Jr., | : | |
| | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on December 3, 2013

*Reminger Co., L.P.A., Brian D. Sullivan, Martin T. Galvin,* and *Marianne Barsoum Stockett,* for relator.

*Michael DeWine,* Attorney General, and *Kevin J. Reis,* for respondent Industrial Commission of Ohio.

*Bevan & Associates, LPA,* and *Christopher J. Stefancik,* for respondent Raymond L. Stevens, Jr.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

CONNOR, J.

{¶ 1} Relator, Turner Construction Company of Ohio, has filed this original action challenging a decision of respondent, Industrial Commission of Ohio ("commission") granting respondent's, Raymond L. Stevens, Jr.'s ("claimant"), application for permanent total disability ("PTD") benefits.

## I.  FACTS AND PROCEDURAL HISTORY

{¶ 2}  In 1992, claimant worked as a bricklayer for H & R Masonry.  On February 26, 1992, he sustained work-related injuries to his left knee and neck when he fell from a roof.  The commission subsequently granted claimant's application for workers' compensation benefits in claim No. 92-41794, which is allowed for: severe left knee sprain; compression fracture T12 with transient left lower radicular pain and parasthesia; thoracic strain/sprain; thoracic root lesion at T10, T11, and T12.  Claimant was off work for eight or nine months while he recovered from his injuries.[1]

{¶ 3}  In 2007, claimant worked as a bricklayer for respondent. Claimant sustained a job-site injury on July 13, 2007, when falling concrete struck him in the back. The commission granted claimant's application for benefits in case No. 07-036527 for the allowed condition of thoracic sprain.  In 2008, claimant filed a C-84 with the commission seeking an additional allowance under the 2007 claim.  The commission granted the application, in part, as to "major depression, single episode," but denied the application for aggravation of pre-existing degenerative disc disease.  Respondent did not file an appeal from the decision of the commission.  Claimant did not return to work following the 2007 injury.

{¶ 4}  Claimant filed an application for PTD on October 14, 2011, accompanied by the medical report of a psychiatrist, Anile M. Parikh, M.D., wherein he states that claimant has developed a "Major Depressive Disorder" due to chronic neck pain. (Stipulated Evidence, exhibit No. 25A.)  Dr. Parikh opined that claimant is unable to participate in any gainful employment due to the allowed psychological conditions in his 2007 claim.

{¶ 5}  Commission specialist, Robert L. Byrnes, Ph.D., subsequently examined claimant relative to his allowed psychological condition and opined that claimant was able to participate in sustained remunerative employment.  In his report, Dr. Byrnes noted that claimant's chief complaints are psychological and that his allowed psychiatric condition has reached maximum medical improvement.

{¶ 6}  Donald J. Weinstein, Ph.D., conducted an independent medical examination relative to the allowed psychological condition.  According to Dr. Weinstein,

---

[1] In 2005, the commission granted benefits to claimant for two other work-related injuries.

due to the allowed psychological condition, claimant was "not capable of returning to any form of sustained remunerative competitive employment." Dr. Weinstein measured claimant's whole body impairment at 31 percent. (Stipulated Evidence, exhibit No 25C.)

{¶ 7} Jon A. Elias, M.D., conducted an independent medical examination of claimant relative to the allowed physical conditions. According to Dr. Elias, claimant has 18 percent impairment as a result of the allowed conditions in the 1992 claim, representing 21 percent whole body impairment. Dr. Elias did not expressly attribute any impairment to the 2007 claim.

{¶ 8} On September 5, 2012, a staff hearing officer ("SHO") granted claimant's application for PTD benefits, allocating claimant's entire award to the conditions allowed in the 2007 claim. In so doing, the SHO expressly relied on the medical opinions of Drs. Parikh and Weinstein.

{¶ 9} On September 19, 2011, relator moved the commission for an order re-allocating the award among the claims. The SHO refused to allocate any of claimant's PTD award to the 1992 claim and denied the motion.

{¶ 10} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, we referred this matter to a magistrate who rendered a decision and recommendation that includes findings of fact and conclusions of law, which is appended hereto. The magistrate concluded that the commission did not abuse its discretion either in granting claimant's PTD application or in allocating claimant's entire award to the 2007 claim. Accordingly, the magistrate recommended that we deny relator's application for a writ of mandamus. Relator has filed objections to the magistrate's decision and the matter is now before us for our independent review.

## II.  STANDARD OF REVIEW

{¶ 11} In order for this court to issue a writ of mandamus, relator must show that it has a clear legal right to the relief sought, and that the commission has a clear legal duty to provide such relief. *See, e.g., State ex rel. Pressley, v. Indus. Comm.*, 11 Ohio St.2d 141 (1967); *State ex rel. Elliott v. Indus. Comm.,* 26 Ohio St.3d 76 (1986). To show that a clear legal right to relief exists, relator must demonstrate that the commission abused its discretion. *See, e.g., id.; State ex rel. Hutton v. Indus. Comm.,* 29 Ohio St.2d 9 (1972). An

abuse of discretion implies that the decision is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217 (1983).

{¶ 12} This court will not determine that the commission abused its discretion when there is some evidence in the record to support the commission's finding. *State ex rel. Rouch v. Eagle Tool & Mach. Co.,* 26 Ohio St.3d 197, 198 (1986). The some evidence standard "reflects the established principle that the commission is in the best position to determine the weight and credibility of the evidence and disputed facts." *State ex rel. Woolum v. Indus. Comm.,* 10th Dist. No. 02AP-780, 2003-Ohio-3336, ¶ 4, citing *State ex rel. Pavis v. Gen. Motors Corp., B.O.C. Group,* 65 Ohio St.3d 30, 33 (1992).

## III. RULING ON OBJECTIONS

{¶ 13} Relator agrees that claimant is permanently and totally disabled but relator disagrees with the 100 percent allocation of the PTD award to the 2007 claim. Additionally, as we have noted, relator did not appeal the commission's decision to allow an additional psychological condition in the 2007 claim and, thus, relator cannot now complain that the commission erred by allowing the condition. Relator sets forth eight separate objections to the magistrate's decision.

{¶ 14} In its fourth, seventh, and eighth objections, relator argues that the commission abused its discretion when it relied on the medical opinion of Dr. Weinstein in awarding PTD benefits and that the magistrate erred in concluding otherwise. Accordingly, we will consider these objections together.

{¶ 15} Relator maintains that even though Dr. Weinstein's report specifically states that PTD is based solely upon the allowed psychological conditions in the 2007 claim, the text of his report establishes that he considered several factors unrelated to the 2007 claim in reaching his opinion. The magistrate expressly rejected relator's argument and set forth specific reasons for doing so. We agree with the magistrate. Indeed, our independent review of Dr. Weinstein's report reveals that it is neither equivocal nor internally inconsistent. *See State ex rel. George v. Indus. Comm.*, 130 Ohio St.3d 405, 407, 2011-Ohio-6036, ¶ 11.

{¶ 16} Similarly, while relator maintains that the commission ignored other competent evidence supporting a more equitable allocation of claimant's PTD award, " 'the presence of contrary evidence is immaterial, so long as the "some evidence"

standard has been met.' " *State ex rel. Hoffman v. Indus. Comm.*, 10th Dist. No. 12AP-456, 2013-Ohio-673, ¶ 7, quoting *State ex rel. Am. Standard, Inc. v. Boehler,* 99 Ohio St.3d 39, 2003-Ohio-2457, ¶ 29. The magistrate determined that the medical report issued by Dr. Weinstein satisfied the "some evidence" standard. We agree with the magistrate's analysis. Accordingly, relator's fourth, seventh, and eighth objections are overruled.

{¶ 17} Relator's sixth objection challenges the magistrate's refusal to consider non-medical disability factors in reviewing the commission's ruling on claimant's PTD application. The magistrate essentially concluded that an analysis of the factors set forth in *State ex rel. Stephenson v. Indus. Comm.,* 31 Ohio St.3d 167 (1987), is unnecessary where the commission's PTD decision is based solely upon an allowed psychological condition. We agree with the magistrate's conclusion. *See State ex rel. PCC Airfoils, Inc. v. Indus. Comm.,* 10th Dist. No. 02AP-1143, 2003-Ohio-3122, affirmed 101 Ohio St.3d 204, 2004-Ohio-707. *See also State ex rel. Jones v. Indus. Comm.,* 10th Dist. No. 10AP-829, 2011-Ohio-5658; *State ex rel. Galion Mfg. Div., Dresser Industries, Inc. v. Haygood*, 60 Ohio St.3d 38, 40 (1991). Therefore, relator's sixth objection is overruled.

{¶ 18} In its fifth objection, relator argues that the magistrate misinterpreted Dr. Elias' report. Dr. Elias examined claimant relative to the allowed physical conditions. The magistrate acknowledged that the commission did not rely on Dr. Elias in making its ruling on PTD. Consequently, even if we were to conclude that the magistrate misinterpreted the report, any such error is harmless inasmuch as the commission based its PTD determination entirely upon the allowed psychological condition in the 2007 claim. Accordingly, relator's fifth objection is overruled.

{¶ 19} In its second objection, relator argues that the entire PTD award cannot be allocated to the 2007 claim simply because "major depression, single episode" is an allowed condition in that claim. However, as noted above, the commission relied on the medical opinions of Drs. Parikh and Weinstein in granting claimant's PTD application. Dr. Weinstein attributed PTD solely to the psychological condition allowed in the 2007 claim. We have determined that Dr. Weinstein's report is "some evidence" in support of the commission's decision. Neither Dr. Weinstein nor Dr. Parikh opined that claimant's psychological condition arose from the 1992 claim. Thus, the evidence upon which the

commission relied does not support an allocation of claimant's PTD award to the 1992 claim.  Accordingly, relator's second objection is overruled.

{¶ 20} Relator's first objection is that the magistrate erred by failing to consider evidence in the record tending to show that the pain claimant experienced from the 2007 injury resolved shortly after the claim was allowed, and by failing to infer from this evidence that the 2007 claim is not the cause of claimant's major depression.  However, the magistrate's decision succinctly sets forth an opposing view of the evidence:

> Claimant sustained [an injury] to his thoracic area in 1992; however, following that injury, claimant was able to return to heavy labor. Claimant sustained two additional injuries in 2005; however, as before, claimant was able to return to heavy labor. Further, there is no medical evidence in the record indicating that claimant sought any psychiatric counseling until after the 2007 injury. Claimant has not worked since 2007 and it is in the 2007 claim that the psychological condition is allowed.

(Magistrate's Decision, 8.)

{¶ 21} The 2007 claim arose from a thoracic sprain sustained by claimant on July 13, 2007.  The commission granted an additional allowance for the condition of "major depression, single episode."  The commission awarded compensation for the additional allowance beginning on March 11, 2008.  Relator did not appeal the commission's decision to allow an additional psychological condition in the 2007 claim.  Consequently, relator cannot now complain that the allowed psychological condition is not causally connected to the physical injuries in the 2007 claim.  Dr. Weinstein's report is some evidence that the major depressive disorder which claimant is now experiencing is caused by the allowed conditions in the 2007 claim.  And, where there is some evidence to support the commission's PTD decision, the presence of contrary evidence is immaterial. *State ex rel. Hoffman; State ex rel. Am. Standard, Inc.*  Based upon the foregoing, relator's first objection is overruled

{¶ 22} In relator's third objection, relator argues that *Armstrong v. John R. Jurgenson Co.*, 136 Ohio St.3d 58, 2013-Ohio-2237 requires the denial of PTD benefits. The magistrate distinguished *Armstrong* on the basis that claimant's right to an additional allowance for major depressive disorder was conclusively established in 2008.

For the reasons cited by the magistrate, we also find that *Armstrong* is distinguishable. Accordingly, relator's third objection is overruled.

## IV.  DISPOSITION

{¶ 23} Following a review of the magistrate's decision and an independent review of the record, we find the magistrate has properly determined the relevant facts and applied the salient law.  Accordingly, relator's eight objections are overruled.  We hereby adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein.  In accordance with the magistrate's recommendation, we deny the requested writ of mandamus.

*Objections overruled;*
*writ of mandamus denied.*

KLATT, P.J., and TYACK, J., concur.

————————————

# A P P E N D I X

### IN THE COURT OF APPEALS OF OHIO

### TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. | : | |
| Turner Construction Company | | |
| of Ohio, | : | |
| | | |
| Relator, | : | |
| | | No. 13AP-11 |
| v. | : | |
| | | (REGULAR CALENDAR) |
| The Industrial Commission of Ohio | : | |
| and Raymond L. Stevens, Jr., | | |
| | : | |
| Respondents. | | |
| | : | |

### M A G I S T R A T E ' S   D E C I S I O N

### Rendered on June 19, 2013

*Reminger Co., L.P.A., Brian D. Sullivan, Martin T. Galvin* and *Marianne Barsoum Stockett,* for relator.

*Michael DeWine,* Attorney General, and *Kevin J. Reis,* for respondent The Industrial Commission of Ohio.

*Bevan & Associates, LPA* and *Christopher J. Stefancik,* for respondent Raymond L. Stevens, Jr.

### IN MANDAMUS

{¶ 24} Relator, Turner Construction Company of Ohio, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which awarded permanent total disability ("PTD") compensation to respondent Raymond L. Stevens, Jr. ("claimant"), and

allocated 100 percent of that award to the claim where relator is the employer and ordering the commission to find that claimant is not entitled to that compensation. If this court finds that the award of PTD compensation is supported by some evidence, relator seeks a writ of mandamus ordering the commission to reallocate the award that involves other claims as well.

Findings of Fact:

{¶ 25} 1. Claimant has sustained four separate work-related injuries and his workers' compensation claims have been allowed as follows:

> Claim #92-41794 is allowed for: Severe left knee sprain; compression fracture T12 with transient left lower radicular pain and paresthesia; thoracic strain/sprain; thoracic root lesion at T10, T11 and T12.
>
> Claim #05-353160 is allowed for: Sprain of left wrist; tenosynovitis, left wrist.
>
> Claim #05-408006 is allowed for: Sprain of right knee and leg.
>
> Claim #07-356527 is allowed for: Thoracic strain; major depressive disorder, single episode. Disallowed: substantial aggravation of pre-existing degenerative disc disease at the C4-5, C5-6, and C6-7.

{¶ 26} 2. The psychological condition was allowed in the 2007 claim in 2008 and resulted in an award of temporary total disability ("TTD") compensation from March 11, 2008 through May 6, 2011 at which time the allowed psychological condition was found to have reached maximum medical improvement ("MMI").

{¶ 27} 3. This original action deals with claimant's 2007 claim with a date of injury of July 13, 2007 where relator was the employer.

{¶ 28} 4. On January 26, 2012, claimant filed an application for PTD compensation. Claimant's application was supported by the September 13, 2011 report of his treating psychiatrist Anil M. Parikh, M.D., who opined that claimant was permanently and totally disabled due to the allowed psychological condition in his 2007 claim. Dr. Parikh described claimant's symptoms as follows:

> Mr. Stevens experiences significant irritability, sadness, anxiety, insomnia, low frustration tolerance, feelings of

anhedonia, loss of interest, poor concentration, and low motivation and energy. He has had difficulty completing daily tasks and often has to rely on others for help. His self esteem has been significantly impacted by his physical restrictions. At times he has also experienced paranoia and significant mistrust of others.

* * *

Despite aggressive treatment with medication and counseling, Mr. Stevens has continued to have significant symptoms of depression. His condition fluctuates depending on his pain level. He continues to have difficulty with feelings of sadness, irritability, anxiety, poor self esteem, low frustration tolerance, low motivation, trouble concentrating, feelings of anhedonia, and social withdrawal. Appropriate treatment has prevented further decompensation of his condition. Despite progress that he has made, Mr. Stevens will continue to need ongoing care due to the severity of his depression which is exacerbated by the continued physical limitations he experiences from his back and neck. He will continue to need further treatment in order to prevent decompensation, deterioration, and potential hospitalization in the future.

Ultimately, Dr. Parikh concluded:

It is my professional opinion with a reasonable degree of medical certainty that Mr. Stevens is totally and permanently disabled solely due to his psychiatric condition of Major Depressive Disorder (296.20) which is directly caused by his work-related injury of July 13th 2007. I hope this information will assist you in filing his claim for permanent total disability with the Bureau of Workers' Compensation. If you need any additional information, do not hesitate to contact me.

{¶ 29} 5. Relator was also examined by Robert L. Byrnes, Ph.D. In his March 15, 2012 report, Dr. Byrnes noted that he had previously examined claimant on October 7, 2010 and March 10, 2011. Dr. Byrnes noted claimant continued to be under a great deal of stress due to his continuing conflicts with his former employer, the fact that he believed his employer had him under surveillance, claimant's contentions that necessary medical treatment had been denied, and he was experiencing financial hardship. Dr. Byrnes noted that claimant's "SIMS total score was elevated above the recommended cutoff for

identification of symptoms magnification [and] [h]e endorsed a high frequency of items that are highly atypical for people with genuine psychiatric or cognitive problems." Ultimately, Dr. Byrnes concluded that claimant's allowed psychiatric condition had reached maximum MMI, that he suffered mild impairment in his activities of daily living, as well as concentration, persistence and pace, and that he had a moderate impairment in his areas of social functioning and deterioration or decompensation in work-like settings. Dr. Byrnes assigned an 18 to 20 percent whole person impairment and concluded that claimant was not permanently and totally disabled, stating:

> In my opinion Mr. Stevens is not permanently and totally disabled from engaging in sustained remunerative employment as a direct and proximate result of the psychological injuries allowed in this claim. Considering only the allowed mental condition in this claim, he would still be capable of working in simple, low stress positions with limited interpersonal demands. His adaptive capacity has been taxed, in part by stressors associated with his work injury; however he would still be able to work in low stress positions for which he is otherwise qualified.

{¶ 30} 6. The commission referred claimant to Donald J. Weinstein, Ph.D., for an independent psychological evaluation. In his May 1, 2012 report, Dr. Weinstein correctly identified the allowed conditions in each of claimant's claims and discussed the medical records which he reviewed. Dr. Weinstein noted that claimant complained of frequent headaches, pain in his mid-back region and lower back which claimant rated at a six out of ten, tremors starting in his calves and moving to his upper legs, waist and stomach, as well as pain and weakness in his left arm with limited range of motion. Dr. Weinstein asked claimant to focus on treatment for his allowed back injury and claimant responded that his pain increases with activity, is mostly low on the left side up through his shoulder blades and that the pain had not changed since the original injury. Dr. Weinstein noted that, in addition to his injuries, claimant had other stressors including marital problems, the denial of social security disability, feelings of betrayal, surveillance by his employer, and financial worries. Dr. Weinstein concluded that claimant had a mild impairment concerning his activities of daily living and a moderate impairment with regard to social functioning, concentration, persistence and pace, and adaptation to stress and work-like settings. In his opinion section, Dr. Weinstein acknowledged that claimant was suffering

from a number of compounding factors in his life, including anger that other physical illnesses/injuries were not allowed as part of his claim; however, Dr. Weinstein specifically stated that his "opinion herein is focused and specific to the allowed physical impairments and the residual psychological impairments from the claim/injury. Mr. Stevens is severely limited by his 2007 injury. Mr. Stevens is not capable of returning to any form of sustained remunerative competitive employment." Dr. Weinstein indicated that claimant had a 31 percent whole person impairment and that he was "[t]oo depressed due to his allowed back injury - Cognitive Deficit[,] Interpersonal Withdrawal - Isolated[,] Helplessness[,] Hopelessness[,] anhedonia."

{¶ 31} 7. Claimant was also examined by Jon A. Elias, M.D., for his allowed physical conditions. In his June 11, 2012 report, Dr. Elias ultimately concluded that claimant had a 21 percent whole person impairment due to the allowed physical conditions in his claim and that he was capable of performing at a sedentary work level.

{¶ 32} 8. Claimant's application was heard before a staff hearing officer ("SHO") on September 5, 2012. At the outset of the SHO order, the SHO incorrectly listed the allowed conditions of claimant's 2007 claim as including the following conditions which are actually allowed in the 1992 claim:

> Claim #07-356527 is allowed for: SEVERE LEFT KNEE SPRAIN; COMPRESSION FRACTURE T12 WITH TRANSIENT LEFT LOWER RADICULAR PAIN AND PARESTHESIA; THORACIC STRAIN/SPRAIN; THORACIC ROOT LESION AT T10, T11 AND T12.

{¶ 33} 9. The SHO relied on the report of Dr. Weinstein to find that claimant was unable to engage in sustained remunerative employment due solely to the allowed condition in his 2007 claim. Because the SHO found that the allowed psychological condition prevented claimant from returning to sustained remunerative employment, there was no discussion of the non-medical disability factors. Further, the SHO determined that the entire award should be paid in the 2007 claim and that the start date was September 13, 2011, the date that Dr. Parikh first opined that claimant was permanently and totally disabled.

{¶ 34} 10. Because the SHO had incorrectly listed the allowed conditions in claimant's 2007 claim, relator requested that the order be vacated.

{¶ 35} 11.  In a corrected order mailed September 20, 2012, the SHO correctly listed the allowed conditions in each of the four separate claims.  The remainder of the previous commission order remained the same, awarding PTD compensation based on the report of Dr. Weinstein and using the date of Dr. Parikh's report as the start date.

{¶ 36} 12.  Thereafter, based on relator's contention that the PTD award should be reallocated so that 100 percent of that award was not awarded under the 2007 claim, another hearing was held before an SHO on October 23, 2012.  The SHO denied relator's motion, stating:

> The Employer's Counsel's contention is not well taken. The Staff Hearing Officer notes the Injured Worker suffered four industrial injuries, and four claims were considered at the time the application for Permanent and Total Disability benefits was adjudicated. After reviewing the four claims at issue, the Staff Hearing [O]fficer finds it is appropriate to allocate 100% of the Permanent and Total Disability benefits to claim number 07-356527.
>
> Permanent and Total Disability benefits were granted based on the opinions of Donald Weinstein, Ph.D. and Anil Parikh, M.D. Drs. Weinstein and Parikh issued opinions with respect to the allowed psychological condition in claim number 07-356527. Drs. Weinstein and Parikh indicate the Injured Worker is unable to work based on the allowed psychological condition in claim number 07-356527. It is significant that claim number 07-356527 is the ONLY claim that contains a psychological condition. Thus, the Staff Hearing Officer finds the appropriate allocation is 100% of the Permanent and Total Disability benefits to be paid in claim number 07-356527.

(Emphasis sic.)

{¶ 37} 13.  Relator's request for reconsideration was denied by order of the commission mailed October 24, 2012.

{¶ 38} 14.  Thereafter, relator filed the instant mandamus action in this court.

Conclusions of Law:

{¶ 39} In this mandamus action, relator argues that the medical evidence clearly demonstrates that claimant has a history of long-standing chronic neck and back problems which cause him pain.  Relator contends that claimant's chronic pain is not the

result of the 2007 thoracic spine sprain, but, instead, the result of the compression fracture he suffered in his thoracic spine in 1992, the cervical disc surgery he underwent, the disc herniations and bulges in his cervical spine, as well as the profound degenerative disc disease, radicular pain, and weakness he suffers. Relator continues to argue that it was an abuse of discretion to allocate the entire award to a 2007 claim.

{¶ 40} For the reasons that follow, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion. The report of Dr. Weinstein constitutes some evidence upon which the commission relied to find that claimant's disability was due to the allowed conditions in the 2007 claim and, as such, allocating 100 percent of the award to that claim.

{¶ 41} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 42} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. *State ex rel. Domjancic v. Indus. Comm.*, 69 Ohio St.3d 693 (1994). Generally, in making this determination, the commission must consider not only medical impairments but also the claimant's age, education, work record and other relevant non-medical factors. *State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167 (1987). Thus, a claimant's medical capacity to work is not dispositive if the claimant's non-medical factors foreclose employability. *State ex rel. Gay v. Mihm*, 68 Ohio St.3d 315 (1994). The commission must also specify in its order

what evidence has been relied upon and briefly explain the reasoning for its decision. *State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203 (1991).

{¶ 43} Although relator correctly asserts that claimant has two claims which are allowed for physical conditions in the thoracic region and that claimant complained of pain in body parts associated with other claims, Dr. Weinstein was very specific in opining that his opinion was confined solely to the allowed conditions in the 2007 claim. As indicated previously, Dr. Weinstein stated:

> The opinion herein is focused and specific to the allowed physical impairments and the residual psychological impairments from the claim/injury. Mr. Stevens is severely limited by his 2007 injury. Mr. Stevens is not capable of returning to any form of sustained remunerative competitive employment.

{¶ 44} Again, at the outset of his report, Dr. Weinstein noted all of the allowed conditions in all four of claimant's claims. Further, Dr. Weinstein acknowledged that claimant suffered from a number of compounding factors, including the fact that he had other physical illnesses/injuries which were not allowed as part of this claim.

{¶ 45} Claimant sustained to his thoracic area in 1992; however, following that injury, claimant was able to return to heavy labor. Claimant sustained two additional injuries in 2005; however, as before, claimant was able to return to heavy labor. Further, there is no medical evidence in the record indicating that claimant sought any psychiatric counseling until after the 2007 injury. Claimant has not worked since 2007 and it is in the 2007 claim that the psychological condition is allowed.

{¶ 46} Relator points out that Dr. Weinstein discussed other stressors in claimant's life including marital problems, the denial of social security disability, betrayal by his employer, surveillance by his employer, and financial worries. Relator also points out that Dr. Weinstein noted that claimant complained of headaches, low back pain, pain and weakness in his left arm, weakness in his legs, and pain in his knees and ankles. Relator contends that the vast majority of these complaints are not attributable to the physical injury claimant sustained and that it is clear that Dr. Weinstein's opinion was not confined solely to the 2007 claim and that the PTD award must be reallocated among the various claims.

{¶ 47} Relator's argument ignores the fact that Dr. Weinstein specifically stated that his opinion was based solely on the allowed conditions arising from the 2007 claim. Relator asks this court to weigh the credibility of Dr. Weinstein's report; however, that is not the responsibility of this court in a mandamus action.

{¶ 48} As a final matter, relator filed a notice of supplemental authority and argues that the Supreme Court of Ohio's recent decision in *Armstrong v. John R. Jurgensen Co.,* Slip Opinion No. 2013-Ohio-2237, warrants the granting of a writ of mandamus. For the reasons that follow, the magistrate disagrees.

{¶ 49} Shawn Armstrong was involved in a motor vehicle accident within the course of his employment. Armstrong noticed the driver of the other car was not moving and was bleeding. While being treated for his injuries at the hospital, Armstrong learned that the other driver had died.

{¶ 50} Armstrong's claim was allowed for certain physical conditions and he filed a motion asking that his claim be additionally allowed for post traumatic stress disorder ("PTSD"). The commission allowed the claim for PTSD finding that it was causally related to his industrial injury and his previously recognized conditions.

{¶ 51} The employer filed an R.C. 4123.512 appeal. William L. Howard, Ph.D., opined that Armstrong's physical injuries did not cause his PTSD, but that his PTSD was caused by witnessing the accident and "the mental observation of the severity of the injury, the fatality, [and] the fact that it could have been life-threatening to him at some point." *Id.* at ¶ 6. Dr. Howard believed that Armstrong would have developed PTSD even if he had not sustained any physical injuries. The trial court held that Armstrong's PTSD should not be additionally allowed because it did not arise from his physical injuries.

{¶ 52} Ultimately, the case was heard before the Supreme Court of Ohio which set forth the question as follows: "The question before us is whether R.C. 4123.01(C)(1) limits workers' compensation coverage for psychiatric conditions to those conditions caused by the claimant's compensable physical injury." *Id.* at ¶ 8.

{¶ 53} The court concluded:

> Armstrong undisputedly suffered compensable physical injuries as a result of the accident, and his PTSD undisputedly arose contemporaneously as a result of the accident. For Armstrong's PTSD to qualify as a compensable

injury under R.C. 4123.01(C)(1), however, more is required; he must establish that his PTSD was causally related to his compensable physical injuries and not simply to his involvement in the accident.

*Id.* at ¶ 29.

{¶ 54} In citing *Armstrong*, relator asserts that the allowed psychiatric condition did not arise from the injuries claimant sustained in the 2007 claim. Armstrong was a right-to-participate case. Here, claimant has already secured the right to participate in the workers' compensation system regarding his psychological condition and it is already an allowed condition in the 2007 claim. While relator continues to argue that claimant's psychological disability is actually caused by other claims or life events, the fact remains that there is some evidence in the record supporting the commission's finding.

{¶ 55} Relator is, in essence, asking this court to reconsider and reweigh the evidence. However, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *Teece.* Furthermore, it is immaterial whether other evidence, even if greater in quality and/or quantity, supports a decision contrary to the commission's. *State ex rel. Pass v. C.S.T. Extraction Co.*, 74 Ohio St.3d 373 (1996).

{¶ 56} Finding that the commission's order awarding PTD compensation to claimant and allocating 100 percent of that award to the 2007 claim is supported by some evidence and does not constitute an abuse of discretion, the magistrate finds that relator has not demonstrated the commission abused its discretion and this court should deny relator's request for a writ of mandamus.

/s/ *Stephanie Bisca Brooks*
STEPHANIE BISCA BROOKS
MAGISTRATE

## NOTICE TO THE PARTIES

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).